CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
January 22, 2025
LAURA A. AUSTIN, CLERK
BY: s/A. Beeson
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| John Gregory Draper, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 7:23-cv-00248 |
| Dr. Paul Ohai *et al.*, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

This matter comes before the court on Defendant Dr. Paul Ohai's motion to dismiss or, in the alternative, a motion for summary judgment (Dkt. 38), Defendant Nurse Wanda Johnson's motion to dismiss or, in the alternative, a motion for summary judgment (Dkt. 41), Defendant Dr. Jaime L. Bohl's motion to dismiss (Dkt. 73), and Defendant Dr. Matthew Fasullo's motion to dismiss. (Dkt. 84.) For the reasons stated below, the court will grant all four motions.

### I.    Factual and Procedural Background

Plaintiff John Gregory Draper, a Virginia inmate proceeding *pro se*, filed this action against Defendants Dr. Paul Ohai, Nurse Practitioner Mark Berry, Nurse Wanda Johnson, George B. Smallfield, Matthew J. Fasullo, Jaime L. Bohl, and Hanna E. Gassie, asserting a claim pursuant to 42 U.S.C. § 1983. (Am. Compl. (Dkt. 36).) Draper's primary claim is that defendants were deliberately indifferent to his serious medical needs in violation of the Eighth

Amendment to the United States Constitution. (*Id.*) Draper had ulcerative colitis and experienced symptoms related to this condition while incarcerated at Buckingham Correctional Center. (*Id.* ¶¶ 5–37.) His condition deteriorated and required the removal of his colon on September 8, 2021, at the VCU Medical Center Hospital. (*Id.* ¶¶ 38–39.)

The only claims expressly asserted by Draper are Section 1983 claims. (*Id.* ¶¶ 45–48 (section of complaint designated as "Legal Claims," specifying claims that the Eighth Amendment was violated).) But, Draper's complaint also references pendent state law claims, which this court considered. (*Id.* ¶ 1 ("[P]laintiff also alleges the torts of deliberate indifference, gross negligence and malpractice.").)

The first event mentioned in Draper's amended complaint that could give rise to his claims occurred on April 12, 2021, when he had a telehealth visit with VCU during which he was told that his prior colonoscopy results showed no active ulcerative colitis and that he could cease taking a previously prescribed medicine. (Dkt. 36 at ¶ 15.) The first date that Draper requested to consult with the institution's medical department about symptoms he was experiencing after discontinuing the medication is May 14, 2021. (*Id.* ¶ 16.) The last events at issue in Draper's complaint occurred between October 4, 2021, when Draper was sent back to the emergency room with an infection after his colon was removed, and when he was returned to the institution's infirmary on October 11, 2021. (*Id.* ¶¶ 40, 42.) Therefore, the latest **possible** date of accrual of any of Draper's claims would be October 11, 2021. Two years later is October 11, 2023.

Draper verified his original complaint on April 21, 2023 (Compl. at 26 (Dkt. 1)), and it was mailed from the prison to the court on April 28, 2023.[1] (*Id.* at 27.) The court received the complaint and filed it on May 2, 2023. (*Id.* at 1.) Draper thus waited almost two years after the first events giving rise to his claims to file his action. The original complaint, among others, named two John Doe and two Jane Doe defendants. (*Id.*) These four Doe defendants were the private physicians who treated Draper after his admittance to the VCU hospital.

On August 21, 2023, the court entered an Order advising Draper that he needed to provide information to identify the Jane and John Doe defendants. (Dkt. 20.) Draper responded by mailing to the court a motion for leave to file an amended complaint on September 7, 2023. (Dkt. 28 at 4.) The motion for leave to file an amended complaint identified the four previously unnamed defendants for the first time. The defendants named were Matthew Fasullo, Hanna Gassie, George Smallfield and Jaime Bohl. (*Id.* at 1–2.) The motion for leave was filed on September 11, 2023 (*see* Dkt. 28), and the court issued an order on September 13, 2023, directing Draper to file an amended complaint by October 4, 2023. (Dkt. 29.) Draper verified his amended complaint on October 10, 2023. (Dkt. 36 at 27.) The amended complaint was mailed to the court with other filings by the institution on October 12, 2023. (Dkts. 34 at 9 (showing mail stamp dated October 12, 2023) and 34-1 (showing amended complaint contained in packet of documents mailed to the court by the institution).)

---

[1] Incarcerated individuals are given extra time for filings pursuant to what is known as the "mailbox rule." *See Houston v. Lack*, 487 U.S. 266 (1988) (holding inmate appeal was "filed" when it was delivered to prison officials for mailing); *Lewis v. Richmond City Police Dep't*, 947 F.2d 733 (4th Cir. 1991) (applying "mailbox rule" to inmate's Section 1983 claim). The extra days permitted inmates to account for the mailing time from prison is not always discussed in opinions because the slight difference in timing usually does not have any consequence or change any analysis. In this case, the court has included all available details on timing to give Draper every possible benefit when considering the relevant dates applicable to the analysis herein.

The amended complaint was received and filed by the court on October 16, 2023, despite its late submission. (Dkt. 36 at 1.)

As to the subsequently named defendants, only defendants Bohl and Fasullo have been served at this time. They each filed a motion to dismiss asserting, among other arguments, that Draper's claims should be dismissed because they are time-barred.[2] (*See* Dkts. 73, 84.)

## II.     Bohl's and Fasullo's Motions to Dismiss

### A. Standard of Review

Dismissal is proper if the well-pleaded facts of the complaint, taken in the light most favorable to the plaintiff and excluding "unwarranted inferences, unreasonable conclusions, or arguments," fail to state a plausible claim for relief. *Epcon Homestead, LLC v. Town of Chapel Hill*, 62 F.4th 882, 885 (4th Cir. 2023) (citation omitted). Claims may be dismissed at the Rule 12(b)(6) stage based upon an affirmative defense, such as the statute of limitations in this case, where the relevant facts "clearly appear on the face of the complaint." *Id.* (quoting *Briscoe v. W.A. Chester, LLC*, 799 F. App'x 183, 183 (4th Cir. 2020)).

### B. Analysis

1. <u>Draper's Section 1983 Claims Against Bohl and Fasullo are Time-Barred</u>

Draper's allegations against Bohl and Fasullo relate to their treatment of Draper, which occurred between July 19 and July 30, 2021.[3] (Dkt. 36 ¶ 30.) The only allegations against Bohl

---

[2] The court issues this memorandum opinion prior to Draper's response deadline for defendant Fasullo's motion to dismiss. Defendants Bohl and Fasullo made identical arguments that Draper's claims were time-barred, and Draper previously filed a response to defendant Bohl's motion outlining his arguments against that contention. Because Draper's allegations against Bohl and Fasullo share the same timing and thus present the same legal issue, the court resolves the statute of limitations issues without waiting for Draper's response.

[3] In Draper's response opposing Bohl's motion (Dkt. 82), he reiterates that his claims about Bohl's treatment and misdiagnosis arose between July 19 and July 30, 2021. (*Id.* at 7.) Draper also mentions that Bohl and/or "her team"

and Fasullo in the amended complaint relate to their treatment of Draper in July 2021.  (*Id.* ¶¶ 30, 48; *see also* Dkt. 28 at 2 (motion for leave to file an Amended Complaint, indicating that only paragraphs 10, 30, 48, and 50 in the original complaint should be modified after the identification of Bohl).)  Bohl and Fasullo were not named as defendants until September 2023 (the earliest possible date giving Draper every benefit of calculation), more than two years after any claim against them accrued.

Section 1983 does not itself contain an express statute of limitations.  Instead, a federal court considering such a claim must apply the forum state's most similar statute of limitations period, which in Virginia is the statute of limitations applicable to personal injury claims. *Wilson v. Garcia*, 471 U.S. 261, 276–80 (1985); *Lewis*, 947 F.2d at 735.  In Virginia, the personal injury statute of limitations is two years under Va. Code Ann. § 8.01-243(A).  Therefore, Draper's Section 1983 claims against each defendant must have been asserted within two years of their accrual or they are time-barred (meaning the claims must be dismissed irrespective of the merits of the claim).  Accordingly, Draper's claims against Bohl and Fasullo are time-barred unless some exception applies.

Certain amendments to a complaint are considered to "relate back" to the original complaint's filing date such that the bar of a statute of limitations can be avoided.  *See* Fed. R.

---

removed his colon on September 8, 2021.  (*Id.*)  According to Draper, this action was required after he determined on August 31st, 2021, that he had been previously "misdiagnos[ed]."  (*Id.*)  It is not clear in Draper's response whether he contends that these encounters with Bohl should extend the limitations period.  Even if this was his contention, parties are not permitted to amend their complaints by adding allegations in an opposition brief. *Jones v. Toro*, No. 3:23cv514, 2023 WL 8881816, at *9 (E.D. Va. Dec. 22, 2023) ("[P]laintiffs — even when proceeding *pro se* — cannot amend their complaints through motions practice."). Draper's amended complaint is clear and is based only on facts relating to Bohl and Fasullo that occurred in July 2021.  Further, any misdiagnosis or deliberate indifference would have occurred prior the time he was advised that his colon would need to be removed on either August 31 or September 1, 2021.  (Dkt 36 ¶¶ 36–37.)  The colon removal procedure itself is not claimed by Draper to have been done improperly or unnecessarily.  Therefore, none of the facts that would support a potential Section 1983 claim against Bohl or Fasullo occurred within the two-year limitations period between the time the claims against them asserted in the amended complaint accrued and the date they were identified as defendants.

Civ. P. 15(c)(1). The subsequent naming of a Doe defendant, however, does not "relate back" under Fourth Circuit law under these circumstances because there was no mistake in misnaming these defendants, *see Locklear v. Bergman & Beving AB*, 457 F.3d 363, 366–67 (4th Cir. 2006) (holding that a lack of knowledge of defendant does not constitute a mistake under Fed. R. Civ. P. 15(c)(1)(C)(ii) (citation to rule updated to reflect rule revision)), and there is no evidence in this case that any of these defendants knew about the claims against them prior to the expiration of the limitations period such that they would not be prejudiced under Fed. R. Civ. P. 15(c)(1)(C)(i). *See Goodman v. Praxair, Inc.*, 494 F.3d 458, 469–71 (4th Cir. 2007) (citation to rule updated to reflect rule revision). Simply put, under Fourth Circuit law, "[n]aming unknown, fictitious, or 'John Doe' defendants in a complaint does not toll the statute of limitations until such time as the names of these parties can be secured." *Bruce v. Smith*, 581 F. Supp. 902, 905 (W.D. Va. 1984). As the court observed, "[t]he burden of finding the proper defendant is on the plaintiff." *Id.* at 906 (quoting *Phillip v. Sam Finley, Inc.*, 270 F. Supp. 292, 294 (W.D. Va. 1967)). Incarcerated *pro se* litigants are admittedly challenged to comply with their many obligations as litigants, but dismissal is proper nonetheless when inmates do not identify the defendants until after the limitations period has expired. *See, e.g., Love v. Lloyd*, No. 5:20-cv-00070, 2023 WL 4850767, at *8 (W.D. Va. July 28, 2023) (dismissing claims of inmate when defendants were identified more than two years after suit was filed); *Cornett v. Weisenburger*, No. 1:05-cv-00101, 2007 WL 321399, at *5–6 (W.D. Va. Jan. 31, 2007) (dismissing unserved claims against Doe defendants asserted by former inmate after limitations period had run). Accordingly, the Section 1983 claims asserted against Bohl and

Fasullo must be dismissed as time-barred. Draper simply waited too long to identify the Doe defendants.[4]

2. Draper's Pendent Claims Arising under Virginia Law are Time-Barred

Similarly, to the extent Draper asserts pendent state law claims against Bohl and Fasullo, those claims are subject to an even shorter one-year limitations period pursuant to Virginia Code § 8.01-243.2, which states:

> [n]o person confined in a state or local correctional facility shall bring or have brought on his behalf any personal action relating to the conditions of his confinement until all available administrative remedies are exhausted. Such action shall be brought by or on behalf of such person within one year after [the] cause of action accrues or within six months after all administrative remedies are exhausted, whichever occurs later.

Va. Code Ann. § 8.01-243.2.

This statute provides the statute of limitations for pendent state law claims when the plaintiff was incarcerated at the time of the alleged injury and when the claim relates to the plaintiff's "conditions of confinement," which is broadly defined. *Lucas v. Woody*, 756 S.E.2d 447, 449–51 (Va. 2014) (applying § 8.01-243.2 to generalized claim that prisoner suffered injury due to defendants' "course of conduct" over a two-month period). Federal district courts in Virginia have repeatedly dismissed tort claims governed by Section 8.01-243.2 for the plaintiff's failure to file within one year after the date of his or her injury. *See, e.g.*, *Wilson v. Pamunkey Reg'l Jail Auth.*, No. 3:23cv89, 2024 WL 4122033, at *12–13 (E.D. Va. Sept. 6, 2024);

---

[4] Draper contends that his claims should not be dismissed because he responded to every order/directive issued by the court. (Dkt. 82 at 10–11.) Draper has indeed been responsive and diligent in pressing his claims. But that does not shift the responsibility from him to the court to identify the defendants to his claims. Draper waited almost two years after the events at issue to file his suit; the late filing date (although within the limitations period for some of his claims against some defendants) removed any "cushion" regarding time that would have been available to Draper had he filed earlier.

*Cashion v. Lee*, No. 5:17-cv-00004, 2017 WL 5179238, at *4–6 (W.D. Va. Nov. 8, 2017); *Harris v. Commonwealth*, No. 3:07CV701, 2008 WL 1869279, at *5–6 (E.D. Va. Apr. 24, 2008). Likewise, any pendent state law claims asserted by Draper against Bohl and Fasullo are also time-barred.

### III. Ohai and Johnson's Motions to Dismiss, or in the Alternative, for Summary Judgment

#### A. Standard of Review

Under Rule 56, summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists only where the record, taken as a whole, could lead a reasonable jury to return a verdict in favor of the nonmoving party. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). In making that determination, the court must take "the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011).

A party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Moreover, "[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247–48. Instead, the non-moving party must produce "significantly probative" evidence from which a reasonable jury could return a verdict in his favor. *Abcor Corp. v. AM Int'l, Inc.*, 916 F.2d 924, 930 (4th Cir. 1990) (*quoting Anderson*, 477 U.S. at 249–50).

### B. Analysis

1. <u>Draper's Claims against Ohai and Johnson Arising Under Virginia Law are Time-Barred</u>

Similarly, defendants Ohai and Johnson also assert that certain claims against them are time-barred. Ohai was the institutional physician at Buckingham Correctional Center, and Johnson was a nurse at the facility. As stated above, the last events mentioned in Draper's amended complaint occurred in October 2021. (Dkt. 36 ¶ 42.) Therefore, at the latest conceivable date, any of Draper's pendent state law claims against Ohai and Johnson were required to be asserted prior to October 2022. Draper did not file his original complaint until May 2, 2023, approximately a year and half after October 2022. Accordingly, any pendent state law claims are time-barred under Va. Code Ann. § 8.01-243.2.

However, Draper's Section 1983 claims against Johnson and Ohai are not time-barred. The first events mentioned in the complaint possibly related to Johnson and Ohai occurred on May 14, 2021 (the date Draper first claims he sought medical attention from the facility related to claimed worsening symptoms). (Dkt. 36 ¶ 16.) Draper filed his original complaint on May 2, 2023, within the applicable two-year limitations period.

2. <u>Draper's Claims against Ohai and Johnson Must be Dismissed Because Draper Failed to Exhaust Available Administrative Remedies</u>

Nonetheless, these defendants still claim dismissal is appropriate as to the Section 1983 claims against them for a reason independent of the statute of limitations defense. Defendants Ohai and Johnson also assert that Draper's claims should be dismissed because he failed to exhaust the administrative remedies that were available to him.

The Prison Litigation Reform Act, 42 U.S.C. § 1997e (1996) ("PLRA"), requires that inmates exhaust available administrative remedies prior to filing civil actions. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 93–95 (2006); *Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."). "[A] court may not excuse a failure to exhaust, even to take [special] circumstances into account" because the PLRA's mandatory exhaustion scheme "foreclos[es] judicial discretion." *Ross v. Blake*, 578 U.S. 632, 639 (2016).

However, inmates can only exhaust the administrative remedies that are "available" to them. *Id.* at 648. In *Ross v. Blake*, the Supreme Court identified three scenarios where the administrative process is considered "unavailable": (1) the administrative process "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) the administrative process is so opaque that "no ordinary prisoner can discern or navigate" through the process; and (3) the "administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643-44. Draper does not claim that any of these exceptions are applicable to his case. Instead, Draper asserts that administrative remedies were not available to him because of his illness. Thus, he claims he could not administratively exhaust through no fault of his own for reasons beyond his control, an exception he contends is acknowledged on the grievance form itself. (*See* Dkt. 39-1 at 94 (form instructs that inmate "must submit [his] grievance within 30 [days] of the original incident or discovery of the incident unless the reason for delay was beyond [his] control").)

- 10 -

Lack of exhaustion is an affirmative defense that must be asserted by defendants. Once a defendant has made a threshold showing of failure to exhaust, the burden of showing that the administrative remedies were unavailable falls to the plaintiff. *Washington v. Rounds*, 223 F. Supp. 3d 452, 459 (D. Md. 2016) (citing *Graham v. Gentry*, 413 F. App'x 660, 663 (4th Cir. 2011)). Whether an administrative remedy has been exhausted for purposes of the PLRA "is a question of law to be determined by the judge." *Creel v. Hudson*, No. 2:14-cv-10648, 2017 WL 4004579, at * 3 (S.D. W. Va. 2017) (quoting *Drippe v. Tobelinski*, 604 F.3d 778, 782 (3d Cir. 2010)) (citing *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015)); *see also Woodhouse v. Duncan*, 741 F. App'x 177, 178 (4th Cir. 2018) (citation omitted) ("[J]udges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury.").

In accordance with the above, the court now considers whether Draper has met his burden to show that he was incapable of exhausting his administrative remedies prior to filing suit. In support of his motion to dismiss, defendant Ohai submitted an affidavit from the grievance coordinator at Buckingham Correctional Center, the facility housing Draper at the relevant times. (Dkt. 39-1 at 1–5.) Draper's entire file of grievance records was submitted, consisting of 95 pages. (*Id.* at 24–119.) There is no dispute in this case about what was filed and/or the dates of filing. Draper does not claim that he lacked any knowledge about the grievance system necessary for him to access it timely.

As explained on page 2 of this Memorandum Opinion, the timeline of events related in Draper's Complaint begins in April 2021 and ends on October 11, 2021, the date upon which he was released from the hospital after being re-admitted for an infection as he healed from the removal of his colon.

On June 3, 2021, Draper filed an emergency grievance on an unrelated issue. (*Id.* at 57.) So, before that point and up to that point, Draper was clearly capable of accessing the grievance system. Draper's next access to the grievance system was on June 25, 2021. Draper submitted an emergency grievance related to medication. (*Id.* at 55.) The emergency grievance was denied on the basis that it did "not meet the definition for an emergency." (*Id.*) Draper did not appeal the denial of that emergency grievance by filing a regular grievance. (*See id.* at 10 (Va. Dep't of Corr. Operating Procedure 866.1(I)(E)(3) (providing that an inmate dissatisfied with a response to an emergency grievance may file a regular grievance)). Draper next filed another emergency grievance on June 29, 2021, related to his colon issues, which was also denied as not an emergency. (*Id.* at 56.) Draper did not appeal that determination. He was next seen at the prison medical department on June 29, 2021, but no emergency room visit was authorized as a result of his being seen. (Dkt. 44-1 at 12.) Draper's next complaint was another emergency grievance on July 18, 2021. (Dkt. 39-1 at 54.) This emergency grievance was treated as an emergency, and Draper was transported to the emergency room that day. (Dkt. 36 ¶¶ 27–29; 39-1 at 30 (referencing July hospital admission).)

Draper did not engage with the grievance system again until November 7, 2021, when he filed an inmate request form about obtaining copies of his medical records. (Dkt. 39-1 at 31.) On November 15, 2021, he wrote an informal/written complaint about the colitis issues, which was marked received on November 18, 2021. (*Id.* at 30.) His first and only regular grievance related to the colitis issues was written by Draper on December 1, 2021, (*id.* at 97), and marked received by the institution on December 3, 2021. (*Id.*) This regular grievance was rejected as having been submitted untimely. (*Id.* at 93–94.) The institution viewed the date of

incident as July 18, 2021 (the date he was transported to the ER after Johnson evaluated him and Ohai ordered the transport). (*Id.* at 94.)

Virginia Department of Corrections Operating Procedure 866.1 regulates the inmate grievance system. The applicable policy was submitted with Dr. Ohai's motion as an attachment to the declaration of Buckingham Correctional Center's grievance coordinator. (*Id.* at 6–23.) Under Operating Procedure 866.1(III)(B)(5), a regular grievance must be submitted within 30 days of the incident or its discovery. (*Id.* at 12.) The Operating Procedure also provides that the deadline can be extended if the "delay is beyond the offender's control, i.e. injury, sickness, etc.", but, in any event, the grievance must be submitted within five days after the condition resolves. (*Id.* at 12–13.) The filing of emergency grievances and informal/written complaints does not obviate the requirements for filing a regular grievance or extend the deadlines for doing so. (*See id.* at 13 (III(C)(3)); *id.* at 10 (I(E)(3)).)

Here, Draper's only regular grievance was filed too late. Even though Draper was seriously ill and in the infirmary and hospital for significant portions of time, he has not met his burden of establishing incapacity to access the grievance system during the relevant time periods. Draper submitted no evidence of incapacity at any point.[5] He did submit some medical records, which document his pain but not his incapacity. (Dkt. 44-1 at 9–11.) His complaint as amended describes how he was often emotional and crying during his medical encounters and that he expressed fear that he might die. (Dkt. 36 ¶¶ 30, 39.) But, that is not

---

[5] He merely states the dates of his admissions to the hospital and to the institutional infirmary. (Dkt. 44 at 7.) He does not provide any information about the gap in August 2021 when he was in general population from August 5th through the 24th. (*Id.*) He submitted no affidavit or declaration from himself of any other person corroborating his incapacity or inability to access the grievance system. He only states that because he was seriously ill, he should be viewed as incapable of accessing the system through "no fault" of his own. (*Id.* at 9.)

- 13 -

the same as showing that he lacked the capacity to utilize the grievance system. Even were the court to treat the entire time period of the incidents mentioned in Draper's complaint as co-extensive with incapacity or as a period of "sickness" or "injury" extending the regular grievance deadline by five days pursuant to Operating Procedure 866.1, Draper still did not timely exhaust his administrative remedies. He was released from the infirmary the final time on October 26, 2021. (Dkt. 44 at 7.) Even were the court to assume Draper's complete incapacity to that point, which has not been established, his regular grievance still was written too late on December 1, 2021, more than five days after the illness resolved and more than 30 days after any incident that could give rise to his claims. The institution did not mark his grievance as being received until December 3, 2021. Untimely grievances do not suffice to meet the exhaustion requirement. *Woodford*, 548 U.S. at 90–91 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.").

Accordingly, the court grants defendants Ohai and Johnson's motions for summary judgment on the basis that Draper failed to timely exhaust administrative remedies available to him.

## IV. Draper's Claims against Unserved Defendants

Several of the defendants remain unserved despite multiple attempts to serve them. (*See* Dkts. 12, 17, 18, 19, 20, 32, 46, 54, 55, 56, 59, 60, 61, 62, 68, 69, 70, 76, 77, 78, and 79) (all entries are related to service).) The court has therefore considered whether the claims against the unserved defendants should also be dismissed. The unserved defendants consist of one

former institutional nurse practitioner (Mark Berry) and two doctors who were formerly employed at VCU (Hanna Gassie and George Smallfield).

The court finds that the claims against Gassie and Smallfield should be dismissed for the same reasons as explained above related to Bohl. Because Draper's complaint is an inmate suit and because he is proceeding *in forma pauperis*, the court is obligated to screen the complaint and dismiss non-viable claims pursuant to statutes that provide screening authority. *See* 28 U.S.C. § 1915A(b)(1) (providing for screening and dismissal of suits that fail to state a claim upon which relief could be granted); 28 U.S.C. § 1915(e)(2)(B)(ii) (same). Typically, screening occurs at the outset of a suit. But here, the statute of limitations bar and the lack of exhaustion bar were raised only in responsive pleadings of other defendants as is to be expected given that these issues are affirmative defenses that can be waived if not asserted in a defendant's responsive pleading. *Jones v. Bock*, 549 U.S. 199, 216 (2007) ("[F]ailure to exhaust is an affirmative defense under the PLRA."); *Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005) ("The raising of the statute of limitations as a bar to plaintiffs' cause of action constitutes an affirmative defense.").

Now that the court has considered these issues and found that Draper's claims should be dismissed on these grounds, dismissal is warranted as to unserved defendants Gassie and Smallfield. Specifically, as to the statute of limitations issues, the Fourth Circuit has concluded that, in evaluating a complaint filed *in forma pauperis*, a district court may consider a statute of limitations defense *sua sponte* when the face of the complaint plainly reveals the existence of such defense. *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 953–56 (4th Cir. 1995). Here, the dates supporting the statute of limitations defense are clear from the amended complaint.

As to the exhaustion issue (which would apply to unserved defendant Berry under the same reasoning as the court applied to defendants Ohai and Johnson), Draper's failure to timely exhaust is not clear from the face of the amended complaint. Some courts have nonetheless found dismissal appropriate under screening statutes as to unserved defendants. *See, e.g.*, *Miskam v. Sherrod*, No. CIV-14-646, 2015 WL 4717062, at *8 (W.D. Okla. June 11, 2015). Similarly, this court has also reasoned:

> Here, the as-of-yet unserved defendants obviously have not raised the issue, but all other defendants (whose counsel likely would also represent most, if not all, of the unserved defendants) raised the defense, and Knutson has been given a full opportunity to respond. Given that the issue has been fully and thoroughly briefed as to many of the defendants, the court declines to allow the resources of the parties and the court to be spent on the futile exercise of requiring that service be effected on all of the remaining defendants and [that the] parties brief the same issues a second time, with the inevitable same result. Accordingly, the claims against the unserved defendants also will be dismissed without prejudice for failure to exhaust.

*Knutson v. Hamilton*, No. 7:20-cv-00455, 2021 WL 4163981, at *6 (W.D. Va. Sept. 13, 2021). The screening statute itself provides for dismissal of claims "at any time," 28 U.S.C. § 1915(e)(2), and here Draper has had a full opportunity to respond and has responded multiple times to both the limitations and exhaustion defenses. However, the Fourth Circuit has not expressly condoned the dismissal of unserved defendants on the basis of a failure to exhaust when the failure is not apparent from the complaint. *See Custis v. Davis*, 851 F.3d 358, 362–63 (4th Cir. 2017) (holding district court erred when it *sua sponte* dismissed inmate's claim on the basis of a failure to exhaust even though inmate had been given an opportunity to respond).

Therefore, the court will not, at this time, dismiss unserved defendant Berry on this basis. Instead, the court turns to Federal Rule of Civil Procedure 4(m), which states:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Berry was identified as a defendant originally when Draper filed his original complaint on May 2, 2023. After Draper complied with the preliminary requirements to proceed *in forma pauperis*, the court directed that waivers of service be sent to serve the defendants. (Dkt. 12.) The request for waiver of service form for Berry was returned to the court on August 17, 2023, by the Attorney General's office. It indicated that Berry had moved out of state and provided his last known physical address and a post office box. (Dkt. 18.) The court then sent that same day another set of request for waver of service forms to Berry at those addresses. (Dkt. 19.) Those waivers were not returned. The court then directed that the United States Marshals attempt service, and a summons was issued to Berry on Sept 25, 2023. (Dkts. 32, 33.) The Marshals then attempted service on three different dates in December 2023, but service upon Berry was not achieved, and the summons was returned to the court unexecuted on January 2, 2024. (Dkt. 46.) The court has no further information as to Berry's whereabouts to effectuate service.

Accordingly, Berry has not been served within 90 days as required by Federal Rule of Civil Procedure 4(m). Of course, the court recognizes that Draper as an incarcerated *pro se* litigant proceeding *in forma pauperis* cannot serve Berry on his own accord, but the court has assisted him and taken steps to effect service to no avail. Accordingly, dismissal of Berry

without prejudice appears proper under Rule 4(m). The court therefore notifies Draper of its intent to dismiss Berry from this action without prejudice in 30 days from the date of the accompanying Order unless Draper provides information establishing good cause for the delay and information sufficient to justify another service attempt. If Draper fails to provide such information within 30 days of the date of this Memorandum Opinion, his claims against Berry will be dismissed without prejudice, and this action will be terminated.

## V. Conclusion

For the reasons stated above, the court **GRANTS** Defendant Dr. Paul Ohai's motion to dismiss or, in the alternative, a motion for summary judgment (Dkt. 38), Defendant Nurse Wanda Johnson's motion to dismiss or, in the alternative, a motion for summary judgment (Dkt. 41), Defendant Dr. Jaime L. Bohl's motion to dismiss, (Dkt. 73), and Defendant Dr. Matthew Fasullo's motion to dismiss. The court also **DISMISSES** defendants Gassie and Smallfield from this action pursuant to 28 U.S.C. §§ 1915A, 1915(e). The only remaining defendant in this action is Berry. The Clerk is **DIRECTED** to send a copy of this Memorandum Opinion to Draper.

**ENTERED** this 22nd day of January 2025.

/s/ *Jasmine H. Yoon*
HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE